UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RONALD S. DEPAOLI,**

    **Petitioner,**

    v.                                            Case No. 21-CV-902-SCD

**DANIEL CROMWELL,**

    **Respondent.**

---

DECISION AND ORDER
GRANTING THE RESPONDENT'S MOTION TO DISMISS

---

Ronald S. Depaoli challenges his 2010 Wisconsin conviction for repeatedly sexually assaulting his stepdaughter when she was twelve to sixteen years old. Depaoli maintained his innocence at trial, but the jury didn't believe him, and the Wisconsin state courts denied his attempts to obtain postconviction relief. More than eight years later, Depaoli filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is in custody in violation of his constitutional rights. Daniel Cromwell, the warden of Redgranite Correctional Institution (where Depaoli is confined), has moved to dismiss the petition, arguing that Depaoli did not file it within the one-year time period permitted by federal law.

There is no dispute that Depaoli filed his petition beyond the one-year deadline established by 28 U.S.C. § 2244(d). Depaoli argues that he should be allowed to proceed with his late petition because he is innocent of the crime for which he was convicted. Because the evidence Depaoli presents is not strong enough to open the narrow actual-innocence gateway, I will grant Cromwell's motion, deny Depaoli's petition, and dismiss this action.

## BACKGROUND

In 2010, a jury found Depaoli guilty of repeated sexual assault of the same child. *See* ECF No. 15-1. The child was his stepdaughter, A.D., who was the principal witness against Depaoli at trial. *See* ECF No. 15-4 at 2. A.D. testified that Depaoli had sexual intercourse with her at least ten times during a three-year period beginning when she was twelve years old. She described a pattern of sexual assault on weekends when her mother was not at home, and she provided specific details about five instances. A.D.'s brother, Antonio, testified that he observed two incidents. *See* ECF No. 15-2 at 2. He said one time he saw Depaoli get on top of A.D. underneath a blanket; another time, he walked into A.D.'s bedroom and saw Depaoli get up and close his robe over his boxer shorts. Antonio said A.D. asked him not to tell their mother because she worried it would lead to a divorce.

A.D.'s mother, Stephanie, also testified at trial. *See id.* at 3. She said she didn't believe her daughter when she first learned about her allegations—or at least she didn't *want* to believe her. Stephanie also said she confronted Depaoli (her husband at the time) soon after she found out and begged Depaoli to say the allegations weren't true. Depaoli, however, did not deny them. Instead, Depaoli told Stephanie "to remember that he 'blacked out,'" expressed that he didn't want to go to jail, and claimed that he was going to kill himself. *Id.* Stephanie testified that Depaoli then ran to the garage, grabbed a knife, and stabbed himself in the neck.

Depaoli's defense at trial was that he never sexually assaulted A.D. *See* ECF No. 16 at 2. He claimed that A.D. lied about the assaults to get back at him for a fight they had about charges on her library card. According to Depaoli, he and A.D. got into a big fight the night before A.D. accused him of sexual assault. Depaoli tore up A.D.'s library card, and the fight got so tense that Stephanie had to stand between them. At trial, A.D. denied that the fight

2

occurred; Stephanie, however, admitted it did. *See* ECF No. 17 at 4. Also at trial, several witnesses testified about A.D.'s propensity for lying. Stephanie said that A.D. lied about "big stuff" and "little stuff"—that's partly why she didn't believe her at first. *See* ECF No. 15-2 at 3. Depaoli's mother and Depaoli's brother's girlfriend also testified that A.D. had lied to them in the past. *See* ECF No. 16 at 3.

The jury ultimately convicted Depaoli, the trial court sentenced him to twenty years of initial confinement and ten years of extended supervision, and the Shawano County Circuit Court entered its judgment of conviction on September 15, 2010. *See* ECF No. 15-1.

Depaoli appealed his conviction in state court. He first filed a postconviction motion alleging ineffective assistance of trial counsel. *See* ECF No. 15-2 at 2. The circuit court denied the motion, the Wisconsin Court of Appeals affirmed, and on April 18, 2013, the Wisconsin Supreme Court denied Depaoli's petition for review. *See* ECF Nos. 15-2, 15-3. Depaoli did not seek relief in the United States Supreme Court. *See* ECF No. 1 at 3. On March 4, 2014, Depaoli filed another postconviction motion, this time alleging ineffective assistance of postconviction counsel. *See* ECF No. 15 at 2–3. Again, the circuit court denied the motion, the Wisconsin Court of Appeals affirmed, and on March 13, 2018, the Wisconsin Supreme Court denied review. *See* ECF Nos. 15-4, 15-5. In October 2018, Depaoli filed a state petition for a writ of habeas corpus alleging additional claims of ineffective assistance of trial counsel. *See* ECF No. 1 at 6; *see also* ECF No. 6 and ECF No. 15 at 3. The Wisconsin Court of Appeals denied the petition, and the Wisconsin Supreme Court denied review. *See* ECF No. 1 at 7–9.

On August 2, 2021, Depaoli filed a habeas petition in federal district court alleging three potential grounds for relief. *See* ECF No. 1. The clerk randomly assigned the matter to me, and all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and

Fed. R. Civ. P. 73(b). *See* ECF Nos. 2, 13. Cromwell, the warden who has custody of Depaoli, has moved to dismiss the petition as untimely under § 2244(d). *See* ECF Nos. 14, 15. Depaoli has submitted a brief opposing the motion, *see* ECF No. 16, and Cromwell has filed a reply brief, *see* ECF No. 17.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 imposes a strict one-year period of limitation on state prisoners seeking collateral relief from federal court. *See* 28 U.S.C. § 2244(d). "That year runs from the latest of four specified dates, only one of which is relevant to this case." *Turner v. Brown*, 845 F.3d 294, 296 (7th Cir. 2017). Under § 2244(d)(1)(A), "a state prisoner must file a petition for a writ of habeas corpus within one year from the date on which his conviction became final, excluding the time that any 'properly filed' petition for state post-conviction or other collateral relief is pending." *Lloyd v. Vannatta*, 296 F.3d 630, 632 (7th Cir. 2002) (quoting 28 U.S.C. § 2244(d)(2)).

Depaoli did not timely file his federal habeas petition under § 2244(d)(1)(A). Depaoli's state conviction became final on July 17, 2013, when the time to seek review by the Supreme Court expired. *See Famous v. Fuchs*, 38 F.4th 625, 627 & n.2 (7th Cir. 2022) (citing Sup Ct. R. 13.1). His federal habeas clock began running the following day, giving him until July 17, 2014, to file a petition in federal court. *See Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002); *see also United States v. Marcello*, 212 F.3d 1005, 1008–10 (7th Cir. 2000) (adopting the anniversary method for determining the end of the one-year period for habeas petitions under 28 U.S.C. § 2255). Depaoli filed his federal habeas petition on August 2, 2021, some 2,937 days later. The time that Depaoli's second state postconviction motion was pending (from March 4, 2014, to March 13, 2018) is not counted toward calculating the limitations period.

4

Excluding that time (a total of 1,470 days), Depaoli filed his petition 1,467 days after his conviction became final, well outside the one-year statutory limit.[1]

Depaoli concedes that he did not file his federal petition within the limitations period of § 2244(d). *See* ECF No. 9. Thus, "his petition is barred as untimely unless he can establish that he qualifies for an exception to the time limit." *Arnold v. Dittmann*, 901 F.3d 830, 836 (7th Cir. 2018). Depaoli argues that the limitations period should be tolled for equitable reasons because there's good cause to believe he is innocent of the crime of conviction.

"Actual innocence is an equitable exception that renders the time limit set forth in section 2244(d)(1) inapplicable." *Arnold*, 901 F.3d at 836 (citing *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)). "[W]hen a petitioner accompanies his persuasive showing of actual innocence with a different claim for relief[,] . . . actual innocence may be used as a 'gateway' to excuse procedural defaults that would otherwise bar a federal court from reaching the merits of the underlying claims." *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015) (citing *McQuiggin*, 569 U.S. at 391–93). "The actual innocence gateway is narrow." *Gladney*, 799 F.3d at 896. Depaoli's "procedural default can be excused only if he 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). Depaoli "must show that 'in light of new evidence, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *Gladney*, 799 F.3d at 896 (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)). "Such new evidence can take the form of any 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

---

[1] Depaoli's state habeas petition did not toll the limitations period because it was not "properly filed" under Wisconsin law, *see State v. Knight*, 484 N.W.2d 540, 544 (Wis. 1992), and it was filed *after* the limitations period had already expired, *see Teas v. Endicott*, 494 F.3d 580, 582–83 (7th Cir. 2007).

5

evidence.'" *Gladney*, 799 F.3d at 896 (quoting *Schlup*, 513 U.S. at 324). In determining whether the exception applies, courts must "consider[] the total record—'all the evidence, old and new, incriminatory and exculpatory'—and make[] 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Gladney*, 799 F.3d at 896 (quoting *House*, 547 U.S. at 538).

Depaoli rests his actual-innocence claim on four pieces of evidence—three affidavits from 2014 and one undated letter—that were not presented at trial. *See* ECF No. 9. The first affidavit is from Depaoli's brother, Robert. *See id.* at 8–9. Robert claims he told Depaoli's trial lawyer that he overheard A.D. tell her mother (Stephanie) prior to the trial that she wanted to change her story and tell the truth. In response, according to Robert, Stephanie said, "If you do I am going to knock your fucking teeth out of your mouth." *Id.* at 8. The second affidavit is from Depaoli's mother, Kathleen Christman. *See id.* at 10. Christman asserts that, several days after A.D. came forward with her allegations, Antonio (A.D.'s brother) told Christman that Stephanie was coaching his testimony and threating physical harm if he didn't comply. The third affidavit is one Depaoli composed himself. *See id.* at 11–12. Depaoli says that, while in custody prior to trial, Stephanie sent him a letter indicating that she thought A.D. was fabricating the allegations. According to Depaoli, he gave the letter to his lawyer, but counsel did not use the letter at trial. The final piece of "new" evidence is a letter purportedly written by Christman. *See id.* at 13–21. In the letter, Christman states that A.D. told her that a police officer tried to date her when she was twelve, around the same time Stephanie's boyfriend grabbed A.D.'s butt and call her sexy, and about a year later Christman's grandson climbed on top of A.D. during the middle of the night. Christman says in the letter that her grandson

was mentally challenged and not interested in girls, so she didn't believe any of A.D.'s prior allegations.

Depaoli contends that the affidavits and the letter are sufficient for his habeas claims to pass through the actual-innocence gateway. According to Depaoli, the affidavits show that Stephanie was forcing A.D. and Antonio to lie about what happened and that Stephanie herself admitted to doubting the truth of A.D.'s allegations. Depaoli says that his trial lawyer could have used the information contained in the documents to impeach the credibility of A.D., Antonio, and Stephanie. Moreover, Depaoli believes that Christman's letter would have been admissible as evidence that A.D. had made prior untruthful allegations of sexual assault.

The evidence presented by Depaoli is not enough to excuse his failure to comply with § 2244(d). First, none of the evidence is sufficiently reliable. To meet the actual-innocence exception, the petitioner must present "documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *McDowell v. Lemke*, 737 F.3d 476, 483–84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005)). Moreover, the affidavits were produced in 2014—about four years after Depaoli was convicted—with no reasonable explanation for the delay. *See McQuiggin*, 569 U.S. at 399 ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing."). The affidavits also are inherently suspect given that the come from Depaoli himself and his close family members. Depaoli's self-serving affidavit mentions a letter he purportedly received from Stephanie. However, because the letter from Stephanie is not included with the affidavit (Depaoli seems to suggest he gave his trial lawyer the only copy), there's no way to corroborate his claims. The letter purportedly from Depaoli's mother

7

also lacks any indicia of reliability, as it's not dated or notarized. Depaoli therefore has not presented any objective proof in support of his innocence claim.

Second, none of the evidence tends to suggest that Depaoli is factually innocent. Depaoli has not produced DNA or other exculpatory evidence to show that he didn't sexually assault A.D. Likewise, Depaoli's evidence does not provide an alibi for any of the incidents alleged by A.D. and witnessed by Antonio. The evidence instead—assuming its truth—merely calls into question the credibility of three witnesses: A.D., Antonio, and Stephanie. But "latter-day impeachment evidence 'seldom, if ever, make[s] a clear and convincing showing that no reasonable juror would have believed the heart of [the witness's] account." *McDowell*, 737 F.3d at 484 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992)).

Finally, as mere impeachment, the evidence Depaoli presents is weak. The evidence is inconsistent, at least as Depaoli sees it. The affidavits from Robert and Christman imply that Stephanie was the mastermind behind it all—A.D. and Antonio wanted to tell "the truth," but Stephanie coerced them to lie to the police and testify falsely against Depaoli. Depaoli's affidavit, however, implies that A.D. was behind the big lie and indicates that Stephanie had reason to doubt the veracity of A.D.'s allegations. The letter trots out both theories, at times implicating Stephanie, while also saying that Christman didn't believe A.D.'s allegations against Depaoli because A.D. had made implausible allegations of inappropriate contact by others in the past. Depaoli does not attempt to reconcile these two theories—that Stephanie forced A.D. to lie and that A.D. lied on her own—in his brief. Nor does he explain why Stephanie would tell him she didn't believe A.D. if she were the one pulling the strings.

The evidence also is cumulative of evidence produced at trial. Depaoli's trial lawyer impeached A.D.'s credibility by showing that A.D. lied about getting into a heated argument

with Depaoli the night before she came forward with her allegations, that Stephanie did not believe A.D. at first, and that A.D. had a reputation for lying. Some of the evidence Depaoli presents here would have reinforced his theory that A.D. was lying but through the testimony of biased witnesses who themselves would have been subject to impeachment. Such evidence is not so strong as to tip the scale in favor of an acquittal. In fact, the evidence that Stephanie coerced her children to falsely accuse Depaoli is inconsistent with Depaoli's trial defense that A.D. made up the allegations as revenge for him tearing up her library card.

In sum, Depaoli has not demonstrated—based on the affidavits from him, his brother, and his mother or the letter apparently from his mother—that it is more likely than not that no jury would have convicted him if that evidence had been presented at trial. Because Depaoli has not shown the miscarriage of justice needed to excuse his failure to comply with the limitations period in § 2244(d), I am precluded from considering the merits of his claims.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Where a district court denies a habeas petition on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000) (emphasis added). Here, no reasonable jurist would find it debatable whether Depaoli timely filed his federal habeas petition or satisfied the actual-innocence exception. I will therefore deny a certificate of appealability.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS** the respondent's motion to dismiss, ECF No. 14; **DENIES** the petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody, ECF No. 1; and **DISMISSES** this action. The court also **DENIES** the petitioner a certificate of appealability. The clerk of court shall enter judgment denying the petition and dismissing this action.

**SO ORDERED** this 29th day of November, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge

10

Case 2:21-cv-00902-SCD   Filed 11/29/22   Page 10 of 10   Document 18